**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

**IN RE:**

**CATHERINE PHILON TATE,**
     **Debtor.**

---

| | |
|---|---|
| **CATHERINE PHILON TATE,** *et al.*,    ) | |
|      **Plaintiffs/Appellees,**    ) | |
|              ) | |
| **v.**    ) | **MISC. ACTION 09-0039-WS-M** |
|              ) | |
| **CITIMORTGAGE, INC.,**    ) | |
|      **Defendant/Appellant.**    ) | |

**ORDER**

This miscellaneous action comes before the Court on defendant/appellant CitiMortgage, Inc.'s Motion for Leave to Appeal (doc. 1) and Motion to Withdraw the Reference (doc. 4). Both motions have been briefed and are now ripe for disposition.

**I.    Procedural History.**

These motions have their origins in an adversary proceeding pending in the U.S. Bankruptcy Court for the Southern District of Alabama and styled *Catherine Philon Tate, et al. v. CitiMortgage, Inc.*, Adversary No. 09-01059-MAM (the "Adversary Proceeding"). The crux of the Adversary Proceeding is plaintiffs' allegation that CitiMortgage systematically filed fraudulent and improper affidavits in underlying bankruptcy cases involving plaintiffs and others similarly situated to them.

**A.    *The Claims Joined in the Adversary Proceeding.***

In their Third Amended Class Action Complaint in the Adversary Proceeding, plaintiffs/appellees Catherine Philon Tate, John Wayne Adams and Sherry Marie Adams allege that each of them had previously brought Chapter 7 or Chapter 13 proceedings in Bankruptcy Court, and that CitiMortgage, "with the active participation and consent of one or more of its attorneys, filed an improper and fraudulent affidavit in support of a motion for relief from stay"

in each of those of those underlying actions.  (Third Complaint, ¶¶ 12, 14, 17.)[1]  The fraudulent

affidavits are alleged to have been filed by CitiMortgage on specific dates in September 2002,

October 2003, and April 2005.  According to the Third Amended Complaint, these improper

filings were symptomatic of a "common and widespread practice" implemented by CitiMortgage

in numerous bankruptcy proceedings, wherein it submitted "affidavits, declarations and

certifications [that] were improper and fraudulent in that the signature pages were executed

and/or notarized separate and apart from one or more other pages of, and/or one or more exhibits

to, and/or some other part of, these affidavits, declarations and certifications."  (*Id.*, ¶ 20.)[2]  Of

some significance to the issues raised before this Court, the Third Amended Complaint expressly

alleges that "[t]he improper nature of Defendant's affidavits is not readily apparent from

reviewing a single affidavit.  In order to discover the nature and scope of Defendant's

misconduct, it is necessary to review multiple affidavits filed by Defendant."  (*Id.*, ¶ 21.)

On the strength of these factual allegations, plaintiffs bring causes of action, individually

and on behalf of others similarly situated, for abuse of the bankruptcy process and fraud on the

Bankruptcy Court.[3]  As to each of their claims, plaintiffs "invoke the Court's inherent powers

---

[1]	Although it has not been filed in this District Court, the Third Amended Class
Action Complaint is found at document 21 on the docket sheet of the Adversary Proceeding, and
was filed in that action on September 15, 2009.

[2]	Plaintiffs illuminate these amorphous allegations with specific examples.  For
instance, plaintiffs contend that CitiMortgage filed an affidavit in plaintiff Tate's Chapter 7 case
that was purportedly signed and notarized on November 19, 2002, but that verified a payment
history exhibit dated November 21, 2002.  (*Id.*, ¶ 10.)  Similarly, plaintiffs allege that
CitiMortgage filed an affidavit in plaintiff Sherry Adams' Chapter 13 case that was purportedly
signed by an employee named Ann Marie Baker, but that repeatedly identified the affiant on the
first page as a non-signatory named Leah Moser.  (*Id.*, ¶ 18.)  The inference is that both
affidavits are fraudulent, the former because it referenced an exhibit that did not exist at the time
of execution, and the latter because Baker could not have read page 1 of her affidavit (in the
name of someone else) before signing it.

[3]	Although there are only three named plaintiffs, the Adversary Proceeding is
postured as a putative class action, purporting to include all individuals who have filed in the
Southern District of Alabama a Chapter 13 or Chapter 7 bankruptcy case in which CitiMortgage
filed an improper or fraudulent affidavit, declaration or certification in support of a motion for
relief from stay or the like.  (*Id.*, ¶¶ 22-28.)

and the Court's powers under § 105 of the Bankruptcy Code." (*Id.*, ¶¶ 31, 34, 38.)[4]  Moreover, the *ad damnum* clause for each of plaintiffs' claims is crafted in identical terms to delimit the types of relief sought.  In particular, those clauses provide that plaintiffs

> "seek all civil relief damages available to them and the class pursuant to § 105 and the Court's inherent powers, including disgorgement and refund or credit of any fees or charges posted to their accounts and/or collected from them in connection with any motions ... where improper and/or fraudulent affidavits, declarations, or certifications were filed in support of said motions, plus interest; sanctions and punitive damages, if punitive damages are available in a civil § 105 context, as determined by the court; attorneys fees and costs in amounts to be determined ...; and any other civil relief damages that the court deems appropriate."

(*Id.* at 8-11.)  Plaintiffs also seek "an order declaring Defendant's practices improper, illegal and fraudulent."  (*Id.*)  In an apparent effort to avert confusion as to the types of relief sought, the final page of the Third Amended Complaint states as follows: "NO CRIMINAL SANCTIONS, NO CRIMINAL PENALTIES, NOR ANY OTHER CRIMINAL RELIEF IS SOUGHT BY THE PLAINTIFFS OR THE CLASS IN THIS COMPLAINT."  (*Id.* at 12.)

### B.    The Bankruptcy Court's Rulings.

#### 1.    Denial of Motion to Dismiss.

CitiMortgage moved to dismiss plaintiffs' claims in the Adversary Proceeding on various

---

[4]    The principles on which plaintiffs' claims for relief rest are well-established in this Circuit.  In particular, the law is clear that "[f]ederal courts, including bankruptcy courts, possess inherent authority to impose sanctions against attorneys and their clients. ... Federal statute 11 U.S.C. § 105(a) also gives the court authority to '*sua sponte*, tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.'  11 U.S.C. § 105(a) (2005)."  *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1263 (11th Cir. 2009).  With respect to § 105, a bankruptcy court "may impose sanctions if a party violates a court order or rule."  *Id.* at 1273.  As for inherent powers, "[t]o impose sanctions under the court's inherent power, the court must find bad faith."  *Id.*; *see also In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) ("The inherent power to sanction is both broader and narrower than" Rule 11 and Bankruptcy Rule 9011 because while "each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses") (citation omitted).  The powers conferred upon a bankruptcy judge pursuant to § 105 are distinct from her inherent powers.  *See In re Hardy*, 97 F.3d 1384, 1389 (11th Cir. 1996) ("Section 105 creates a statutory contempt power, distinct from the court's inherent contempt powers in bankruptcy proceedings ....").

grounds, including *res judicata*, waiver and laches. As to these defenses, the thrust of the motion to dismiss was that "Plaintiffs had the opportunity to raise any issue with the affidavits during their underlying bankruptcy proceedings, yet they failed to do so at the time the affidavits were filed and before final judgments were entered" in those underlying cases. (Doc. 1, at 9.) In support of that premise, CitiMortgage's motion pointed to certain materials culled from the court files of plaintiffs' bankruptcy actions, including documents showing that plaintiffs had consented to the motions as to which the allegedly fraudulent affidavits were filed, that one of those motions had been withdrawn, and that final judgment on the merits had been entered in each plaintiff's bankruptcy case without any objection being raised as to the veracity or propriety of any CitiMortgage affidavit.

On October 29, 2009, Bankruptcy Judge Mahoney entered an 11-page ruling in the Adversary Proceeding styled "Order Denying Motion of Defendant to Dismiss Complaint" (doc. 1, Exh. A). With respect to the *res judicata* defense, the Bankruptcy Court noted CitiMortgage's reliance on the entry of final judgment in each of the underlying bankruptcy cases, but concluded that "that fact is not contained in the complaint – the document which contains the only facts to be considered. Therefore, to the extent a *res judicata* defense to the plaintiffs' claims might be proper, it is prematurely raised in this context and due to be denied." (Doc. 1, Exh. A, at 4.) As for the waiver defense, Judge Mahoney pointed out that CitiMortgage was asserting that plaintiffs had failed to object to the affidavits in the underlying cases, but that "[w]hether Tate or the Adamses objected to the affidavits is not a fact in the complaint. Therefore, to the extent a waiver defense to the plaintiffs' claims might be proper, it is prematurely raised in this context and due to be denied." (*Id.* at 4-5.) Finally, as to the laches defense, the Bankruptcy Court recognized that the four-year delay between underlying affidavit and the Adversary Proceeding was indeed alleged on the face of the complaint, but also observed that the complaint was devoid of the facts on which CitiMortgage grounded its claim of prejudice (*i.e.*, that one of CitiMortgage's attorneys responsible for one of the affidavits had died in the interim, that witnesses had dispersed with the passage of time, and that key documents may have been lost). In the absence of facts in the complaint showing prejudice, much less exploring the reasons and excuses for plaintiffs' delay in filing suit, Judge Mahoney concluded that "the motion to dismiss based upon laches is denied at this time." (*Id.* at 5.)

Significantly, the refusal to consider facts beyond the four corners of the Complaint was not the sole stated reason for the denial of CitiMortgage's motion to dismiss on theories of *res judicata*, waiver and laches. To the contrary, the October 29 Order also indicated that all of these defenses were rooted in the notion "that the plaintiffs knew or should have known of the stated improprieties in the affidavits" sometime earlier. (*Id.* at 9.) Judge Mahoney found, however, that this line of defense was flawed, reasoning as follows:

> "The plaintiffs are alleging fraud on the court that is not between the parties but is the type of fraud that damages the judicial process and/or is an affront to the court as an institution. ***This type of fraud does not require any due diligence by the plaintiffs and their knowledge is not a defense.*** ... No court can be prevented from determining whether any attorney or litigant has abused the court or the judicial process merely because no party caught the impropriety before a ruling. A debtor's focus on his or her own issues should not allow fraudulent practices to be ignored or punishment for them avoided. The damage alleged in this case is far more widespread than damage to an individual debtor. The damage is to the system itself. If improper procedures are followed by parties or their counsel, they must be unearthed, examined, and punished if necessary. This is the only way to keep the judicial process fair and above criticism."

(Doc. 1, Exh. A, at 10-11 (emphasis added).)

## 2.      *Decision to Strike Defendant's Jury Demand.*

The other ruling by Judge Mahoney that bears on the instant motions concerns CitiMortgage's jury demand. On November 16, 2009, CitiMortgage filed a Demand for Jury Trial in the Adversary Proceeding, wherein it invoked its right to a jury trial on all claims, pursuant to Rule 9015, Fed.R.Bankr.P., and Rule 38, Fed.R.Civ.P. (Doc. 4, Exh. 1.) In that filing, CitiMortgage also indicated that it did not consent to jury trial before a bankruptcy judge, notwithstanding the mechanism under 28 U.S.C. § 157(e) authorizing bankruptcy judges to conduct jury trials with the consent of all parties if specially designated to do so.

CitiMortgage's position is that it is entitled to trial by jury on the claims asserted in the Adversary Proceeding because plaintiffs are requesting money damages.[5] The Bankruptcy Court

---

[5]      Indeed, defendant succinctly stated its grounds for demanding a jury in the Adversary Proceeding in the following terms: "Because the claims in Plaintiffs' Complaint seek legal relief in the form of monetary damages, the Seventh Amendment to the U.S. Constitution provides that CitiMortgage is entitled to a jury trial." (Doc. 4, at 2.)

disagreed.  After briefing and oral argument, Judge Mahoney granted plaintiffs' motion to strike the jury demand by written order dated December 16, 2009.  (Doc. 9, at Exh. 1.)  As grounds for this determination, the Bankruptcy Court incorporated and adopted its findings of fact and conclusions of law from several previous decisions, including an order entered in *Thigpen v. Matrix Financial Services Corporation*, Case No. 04-01035 (docket no. 57), on August 2, 2004.  Like the case at bar, *Thigpen* involved allegations that the defendant had abused the bankruptcy process by filing improper and false affidavits in support of motions for relief from stay in underlying bankruptcy proceedings.  Like the plaintiffs here, the *Thigpen* plaintiff sought relief under § 105, including compensatory and punitive damages, if available under that provision.[6]  The *Thigpen* ruling, in a nutshell, was that the plaintiff's decision to limit the relief sought to civil remedies available under § 105 negated any constitutional right to a jury trial.[7]

In addition to relying on *Thigpen*, Judge Mahoney later explained her reasoning for

---

[6]        Whatever merit it may or may not ultimately have (and the Court expresses no opinion on that issue at this time), the viewpoint that § 105 may authorize imposition of compensatory or punitive damages is not wholly bereft of authoritative support.  For example, the Eleventh Circuit has observed in *dicta* that, by its terms, § 105 "encompasses all forms of orders including those that award monetary relief" and that "the plain meaning of § 105 encompasses any type of order, whether injunctive, compensatory or punitive, as long as it is necessary or appropriate to carry out the provisions of the Bankruptcy Code."  *Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1554 (11th Cir. 1996) (internal quotation marks omitted).

[7]        *Thigpen* elaborated on this conclusion as follows:

"If the debtor is limiting herself to relief under § 105 for abuse of process and improper notarization of affidavits ..., the debtor is seeking relief that is a public right and such relief was not available in 18th century England.  Section 105 and the U.S. bankruptcy system did not exist in 18th century England.  The right is a public one, rather than private, because it involves not only the parties, but the integrity of the judicial process and is a matter concerning the administration of the bankruptcy estate.
        "No jury trial right for contempt or sanctions exists according to case law either. ... The debtor ... chooses to limit the relief pursued in her complaint to those civil remedies accorded to her under § 105 of the Bankruptcy Code.  Based upon this limitation of her complaint, the Court concludes that [the defendant] does not have a right to a jury trial."

(Doc. 5, Exh. 1, at 5, 9.)

striking CitiMortgage's jury demand by noting that plaintiffs in this Adversary Proceeding have requested "only damages appropriate for civil contempt or for violation of section 105 or the Court's inherent powers.  The Court ... will hold the Plaintiffs to their assertion that they are not seeking punitive damages or any damages outside those contexts. ... Any court can punish parties who are in contempt of that court without impaneling a jury."  (Report and Recommendation dated January 6, 2010, filed as doc. 50 in Adversary Proceeding.)

## II.     CitiMortgage's Request for Interlocutory Appeal.

Having examined the factual and procedural backdrop against which this case reached District Court, it is now appropriate to turn to CitiMortgage's specific requests for relief. CitiMortgage's first motion seeks leave to appeal to this District Court the denial of its motion to dismiss.  The crux of the proposed appeal is defendant's contention that the October 29 Order suffers from an "erroneous legal holding" in the form of the Bankruptcy Court's determination "that it could not consider facts contained in public records such as the bankruptcy court filings in support of the motion."  (Doc. 1, at 7.)

Federal district courts have jurisdiction to hear appeals "***with leave of court***, from interlocutory orders and decrees [] of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title."  28 U.S.C. § 158(a) (emphasis added).  The statute vests district courts with discretion in determining whether or not to allow an appeal from an interlocutory order entered in a pending bankruptcy proceeding.[8]  In wielding this discretion, district courts typically adopt and apply the more general standards for certification of interlocutory appeals prescribed by 28 U.S.C. § 1292(b).[9]  The parties are in

---

[8]     *See, e.g., In re Kassover*, 343 F.3d 91, 94 (2nd Cir. 2003) ("Under Section 158(a)(3), a district court has discretionary appellate jurisdiction over an interlocutory order of a bankruptcy court."); *In re Seminole Walls & Ceilings Corp.*, 388 B.R. 386, 390 (M.D. Fla. 2008) ("The decision to grant or deny leave to appeal a bankruptcy court's interlocutory order is committed to the district court's discretion.") (citation omitted); *In re Reserve Production, Inc.*, 190 B.R. 287, 289 (E.D. Tex. 1995) ("Leave to appeal a bankruptcy court's interlocutory order lies in the discretion of the district court.").

[9]     *See, e.g., Seminole*, 388 B.R. at 390-91 (district court exercising discretion under § 158(a) "will look to the standards which govern interlocutory appeals from the district court to the court of appeals pursuant to 28 U.S.C. § 1292(b)") (citation omitted); *Atlantic Textile Group,*

agreement that such an approach is proper here.  (Doc. 1, at 8; doc. 3, at 5.)

     As a threshold matter, the Eleventh Circuit has characterized § 1292(b) interlocutory appeals as a "rare exception" to the premise that the great bulk of appellate review must be conducted after final judgment.  *McFarlin v. Conseco Services, LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004); *see also OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1359 (11th Cir. 2008) (pointing out that "§ 1292(b) sets a high threshold for certification to prevent piecemeal appeals" and that "[m]ost interlocutory orders do not meet this test"); *United States v. One Parcel of Real Property With Bldgs., Appurtenances & Improvements*, 767 F.2d 1495, 1498 (11th Cir. 1985) (recognizing "strong presumption against interlocutory appeals"); *Camacho v. Puerto Rico Ports Authority*, 369 F.3d 570, 573 (1st Cir. 2004) ("Section 1292(b) is meant to be used sparingly, and appeals under it are, accordingly, hen's-teeth rare.").  "Because permitting piecemeal appeals is bad policy, permitting liberal use of § 1292(b) interlocutory appeals is bad policy."  *McFarlin*, 381 F.3d at 1259.  The instant request for review of an interlocutory order under § 158(a) is cloaked with the same disfavored status that characterizes § 1292(b) motions. *See In re CIS Corp.*, 188 B.R. 873, 878 (S.D.N.Y. 1995) (interlocutory appeal under § 158(a) "is not to be granted lightly," but should be permitted "only in exceptional circumstances").

     By its terms, § 1292(b) authorizes appeal of an interlocutory order only where the following criteria are satisfied: (1) "such order involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *see also OFS Fitel*, 549 F.3d at 1359 (litigant seeking § 1292(b) certification must satisfy all of these elements); *McFarlin*, 381 F.3d at 1256 (describing these three criteria as the "core requirement" for § 1292(b) certification).  Once again, the parties here agree that the § 1292(b) criteria are controlling.  (Doc. 1, at 8; doc. 3, at 5.)

     Although the parties spar as to all three components of the § 1292(b) standard, the Court

---

*Inc. v. Neal*, 191 B.R. 652, 653 (E.D. Va. 1996) ("although section 158 provides no direct guidance concerning the grant or denial of leave to appeal interlocutory orders, many courts apply an analysis similar to that employed by the district court in certifying interlocutory review by the circuit court of appeals under 28 U.S.C. § 1292(b)"); *Reserve Production*, 190 B.R. at 290 ("lower courts routinely analogize to § 1292(b) in considering leave to appeal under § 158(a)").

finds that the third element is dispositive in this case.  As noted, interlocutory appeal is improper absent a showing that "an immediate appeal will advance the termination of the litigation."  *OFS Fitel*, 549 F.3d at 1359.  Defendant has not made a sufficient showing that the contemplated appeal of the October 29 Order would materially advance the ultimate termination of this litigation.  CitiMortgage has framed its proposed appeal in the following terms: "The question presented in this case is simply whether a trial court may consider public records outside the pleadings in support of a motion to dismiss. ... The Bankruptcy Court ... states in its Order that it is **precluded** from considering facts in the record that are not stated in the complaint."  (Doc. 6, at 5 (emphasis in original).)  The Court finds for three distinct reasons that even if the October 29 Order were reversed as to this issue on interlocutory appeal, that event would not materially advance the termination of this litigation.

First, accepting CitiMortgage's assignment of error as a correct statement of law (which is assumed, not decided, here), what it seeks on appeal is a ruling that the Bankruptcy Court "may" (not must) consider public records in ruling on a motion to dismiss, where facts set forth in those records are not otherwise alleged in the pleadings.  In other words, the error that CitiMortgage ascribes to Judge Mahoney is not that she failed to consider public records, but that she opined that she was <u>precluded</u> from doing so.[10]  Thus, if CitiMortgage were to prevail on

_____

[10]     To reinforce the point, it bears noting that the authorities cited by CitiMortgage do not state that it is mandatory for a trial court to consider public records in deciding a motion to dismiss, only that it is permissible to do so.  (*See* doc. 1, at 10.)  This is consistent with plaintiffs' position and Eleventh Circuit case law stating that the decision not to take judicial notice of certain facts is discretionary.  *See, e.g., Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1204 (11th Cir. 2004) (explaining that a district court "may take judicial notice of appropriate adjudicative facts at any stage in a proceeding" and that it "has wide discretion" to do so); *Cash Inn of Dade, Inc. v. Metropolitan Dade County*, 938 F.2d 1239, 1243 (11th Cir. 1991) ("A district court may take judicial notice of public records within its files relating to the particular case before it or other related cases.").  CitiMortgage has made no argument and offered no authority for the proposition that Judge Mahoney was bound to consider the proffered public records in ruling on the motion to dismiss.  There is ample authority suggesting that consideration of public records is permissive, rather than obligatory.  *See, e.g., Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("a document outside the four corners of the complaint may still be considered" on a Rule 12(b) motion in certain circumstances); *Rederford v. US Airways, Inc.*, 586 F. Supp.2d 47, 50-51 (D.R.I. 2008) ("it is within the Court's discretion on 12(b)(6) motion to consider materials that

appeal, this Court would find error and remand the case to the Bankruptcy Court with instructions that the bankruptcy judge was not forbidden from considering public records. Given her previous stated unwillingness to examine such materials outside the pleadings, however, Judge Mahoney could and likely would exercise her discretion <u>not</u> to consider such materials on the motion to dismiss. In that event, she would probably re-enter an order identical to the October 29 Order, with the only difference being that Judge Mahoney would hold her mouth differently in explaining why she was not weighing the public records submitted by CitiMortgage on the motion to dismiss. Far from materially advancing ultimate termination of litigation, this sequence of events would be a pointless exercise, correcting what is at most a technical misstep in the October 29 Order at the hefty price of protracted delay, proliferation of litigation, and piecemeal adjudication of disputes.

Second, allowing interlocutory appeal on the issue presented would not materially advance the ultimate termination of this litigation because the documents in question would, if considered, yield conflicting factual inferences that cannot be resolved at the motion to dismiss stage. Indeed, the Third Amended Complaint contained a specific factual allegation that "[t]he improper nature of Defendant's affidavits is not readily apparent from reviewing a single affidavit. In order to discover the nature and scope of Defendant's misconduct, it is necessary to review multiple affidavits filed by Defendant." (Third Amended Complaint, ¶ 21.) That statement, like all other well-pleaded facts in the complaint, must be accepted as true for purposes of a motion to dismiss. *See, e.g., American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007) ("a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true when it considers a motion to dismiss a complaint under Rule 12(b)(6)"). In urging the Bankruptcy Court to examine public records concerning the underlying bankruptcy actions, CitiMortgage's point was that the Adversary Proceeding was barred because plaintiffs knew or should have known about the

---

are integrally linked to the complaint, capable of judicial notice, and acknowledged by a party opposing the motion"); *Tolan v. United States*, 176 F.R.D. 507, 511 (E.D. Pa. 1998) ("while a wide range of material may be introduced in conjunction with a Rule 12(b) motion, it is subject to the court's discretion to reject the evidence").

defective affidavits during those underlying bankruptcy cases, but did not object then.[11]  Stated differently, the affirmative defenses at issue on this requested appeal (*res judicata*, waiver, laches) proceed from the proposition that Tate and the Adamses knew or should have known about the fraudulent or improper nature of the affidavits back when their Chapter 7 or Chapter 13 proceedings were pending, and that their failure to raise the issue then bars them from doing so now.  But the well-pleaded factual allegations of the Third Amended Complaint are to the contrary.  Tate and the Adamses allege that they could not perceive the nature and scope of the alleged fraud and impropriety at the time.  Thus, even if the public records were considered, plaintiffs' factual allegation that the improper nature of CitiMortgage's affidavits was not apparent in isolation would create factual issues necessitating denial of the motion to dismiss in the Adversary Proceeding.

Third, and finally, a successful appeal for CitiMortgage on the question of whether the Bankruptcy Court "can look outside the pleadings at public records when considering a motion to dismiss" (doc. 6, at 7) would not alter the outcome of the motion to dismiss, or materially advance the termination of these proceedings, because the exclusion of such materials was not the sole basis for the Bankruptcy Court's ruling.  Indeed, Judge Mahoney set forth as an alternative ground for declining to dismiss on grounds of *res judicata*, waiver and laches her determination that the misconduct alleged by the plaintiffs "is the type of fraud that damages the judicial process" and therefore "does not require any due diligence by the plaintiffs and ***their knowledge is not a defense*.**"  (Doc. 1, Exh. A, at 10 (emphasis added).)  What this means is that the Bankruptcy Court held that even if the facts for which CityMortgage submitted excluded evidence were true (*i.e.*, even if Tate and the Adamses knew or should have known that the

---

[11]     CitiMortgage reiterates that point in its filings here.  As to the *res judicata* defense, defendant argues that "Plaintiffs 'knew or should have known' of any issue with the affidavits at the time of their relief from stay hearing" and that the defects in the affidavits "were readily apparent when the affidavits were filed and served."  (Doc. 1, at 16-17.)  Similarly, CitiMortgage contends that its waiver defense is valid because documents "from the underlying bankruptcy cases clearly show[] that Plaintiffs waived any claims based on the alleged issues that have always been apparent."  (*Id.* at 17-18.)  Finally, on the laches defense, CitiMortgage's position is that "[t]here is simply no serious argument that Plaintiffs should not, and could not, have raised these issues in the original proceedings."  (*Id.* at 19.)

affidavits were fraudulent or improper, and even if they unreasonably tarried in objecting, and even if CitiMortgage had been prejudiced thereby), dismissal on grounds of *res judicata*, waiver or laches would remain inappropriate because of the type of fraud alleged amounts to an abuse of the court or of the judicial process, rather than merely a fraud between two parties. CitiMortgage has not requested leave to appeal that alternate ground for denial of its motion to dismiss, and has not even acknowledged that aspect of the October 29 Order. Accordingly, even if the requested interlocutory appeal were allowed and were decided in its favor, CitiMortgage would still confront the inexorable reality that its motion to dismiss on grounds of untimely complaint by Tate and the Adamses would be denied because of the Bankruptcy Court's separate reasoning that the alleged fraud at issue here was perpetrated on the court or the judicial process and is therefore not subject to dismissal even if plaintiffs failed to act in a timely manner.

In sum, the Court finds that to allow an interlocutory appeal on the issue presented by CitiMortgage would be a hollow gesture that would not and could not materially advance the termination of this litigation. Even if CitiMortgage were to prevail and this Court were to find that the Bankruptcy Court erred in stating that it could not look outside the pleadings at public records in ruling on the motion to dismiss, the ultimate result is that the parties would find themselves in exactly the position they are in today. The denial of the motion to dismiss would remain intact (albeit perhaps with slightly different wording) because of one or more of the following: (a) the Bankruptcy Court's exercise of discretion not to consider the proffered public records; (b) the existence of well-pleaded facts in the complaint showing that plaintiffs could not discern the fraudulent or improper nature of the affidavits at the time, which facts must be accepted as true at the motion to dismiss stage; and (c) the presence of an alternative stated ground for rejection of CitiMortgage's timeliness defenses, namely, that the misconduct in question was a fraud on the court and therefore not subject to being extinguished by principles of *res judicata*, waiver or laches simply because plaintiffs did not raise it as expeditiously as they might have.

For all of these reasons, the Court exercises its discretion under § 158(a) to **deny** defendant leave to bring an interlocutory appeal of the Bankruptcy Court's order entered on October 29, 2009 in the Adversary Proceeding. The nature of the appeal would consist of nothing more than procedural nit-picking that would not be substantially likely to alter the result

of the Bankruptcy Court's ruling, but would instead consume the time and energy of both litigants and this Court in an enterprise calculated to second-guess a technical, non-substantive, collateral aspect of the October 29 Order on a piecemeal basis.

### III.    CitiMortgage's Request for Withdrawal of the Reference.

Via separate motion, CitiMortgage also requests that the reference to the Bankruptcy Court be withdrawn, and that the Adversary Proceeding be litigated to conclusion in this forum.

### A.    *Legal Standard for Withdrawal of Reference.*

By statute, "[e]ach district court may provide that ... any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a); *see generally In re Trusted Net Media Holdings, LLC*, 550 F.3d 1035, 1039 (11th Cir. 2008) (recognizing that "bankruptcy court jurisdiction exists, by reference from the district courts, in three categories of proceedings: those that arise under title 11, those that arise in cases under title 11, and those related to cases under title 11") (citations and internal quotation marks omitted). This District Court has long utilized the § 157(a) referral mechanism; indeed, a general Order of Reference provides that, pursuant to § 157(a), "all cases under Title 11, and all proceedings arising under Title 11 or arising in or related to cases under Title 11, are referred to the Bankruptcy Judges of this District ...." *Id.* Defendant does not dispute that the Adversary Proceeding falls within the categories of cases that are automatically referred to the Bankruptcy Court in the Southern District of Alabama, nor does it suggest that bankruptcy jurisdiction is lacking.

Nonetheless, CitiMortgage invokes the statutory provision authorizing district courts to withdraw "in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).[12] The "cause" contemplated by § 157(d) "is not an empty requirement." *In re Simmons*, 200 F.3d 738, 741

---

[12]    In addition to this discretionary withdrawal language, § 157(d) also includes a mandatory withdrawal provision. However, CitiMortgage's Motion proceeds solely under the discretionary aspect of § 157(d), without invoking the mandatory withdrawal prong.

(11th Cir. 2000).[13]  "The burden of demonstrating grounds for withdrawal is on the movant."  *In re Peanut Corp. of America*, 407 B.R. 862, 864 (W.D. Va. 2009); *see also In re Morrison*, 409 B.R. 384, 386 (S.D. Tex. 2009) ("The party seeking withdrawal of the reference has the burden of establishing a sound articulated foundation for permissive withdrawal.") (citation and internal quotation marks omitted).  Where cause is shown, the district court may in its discretion withdraw the reference to bankruptcy court.  *See, e.g., Holmes v. Grubman*, 315 F. Supp.2d 1376, 1380 (M.D. Ga. 2004) ("The decision to allow a permissive withdrawal is within the sound discretion of the district court, but should only be done where appropriate, that is where good cause is shown."); *In re H & W Motor Express Co.*, 343 B.R. 208, 214 (N.D. Iowa 2006) (similar).

CitiMortgage now seeks withdrawal of the reference for cause.  The "cause" identified by CitiMortgage is primarily its demand for a jury trial, although its principal brief also touches on several additional grounds (*i.e.*, this is a non-core proceeding, judicial economy and efficiency would be served by withdrawal, and withdrawal would preserve interlocutory appeal rights as to class certification rulings).

### B.  Jury Demand Does Not Provide Cause.

In large part, CitiMortgage predicates its § 157(d) motion on its demand for jury trial in the Adversary Proceeding.  CitiMortgage reasons that where a Seventh Amendment right to jury trial exists, and where a party does not consent to the bankruptcy court conducting such jury trial, the case must be tried in the District Court.  This proposition is uncontroversial.  *See* 28 U.S.C. § 157(e) ("If the right to a jury trial applies ..., the bankruptcy judge may conduct the jury trial ... **with the express consent of all the parties**.") (emphasis added); *Levine v. M & A Custom*

---

[13]        *See generally In re American Classic Voyages Co.*, 337 B.R. 509, 511 (D. Del. 2006) (cause provision of § 157(d) "creates a presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court, unless rebutted by a contravening policy") (citations and internal quotation marks omitted); *Murphy v. County of Chemung*, 410 B.R. 145, 148 (W.D.N.Y. 2009) (opining that § 157(d) should be construed "narrowly so that it is not utilized as an escape hatch through which most bankruptcy matters could be removed to a district court") (citations and internal quotation marks omitted); *CIS*, 188 B.R. at 877 (noting that courts apply § 157(d) narrowly "so that it does not provide an 'escape hatch' out of bankruptcy court").

*Home Builder & Developer, LLC*, 400 B.R. 200, 205 (S.D. Tex. 2008) ("without consent of the parties, a bankruptcy judge lacks the authority to conduct a jury trial").

Nonetheless, CitiMortgage's argument suffers from two inescapable infirmities. First, and most glaringly, there is no longer an operative and effective jury demand in the Adversary Proceeding. By written order dated December 16, 2009, Judge Mahoney granted plaintiffs' motion to strike defendant's jury demand. (*See* doc. 9, at Exh. 1.) In light of the Bankruptcy Court's ruling, there is at present no jury demand in the Adversary Proceeding to which a Seventh Amendment right might attach. That CitiMortgage may have previously asserted a right to jury trial does not provide a viable basis for withdrawing the reference pursuant to § 157(d) and (e), where the jury demand has subsequently been stricken.[14]

Second, even if the Bankruptcy Court's decision to strike CitiMortgage's jury demand was erroneous, the mere presence of a jury demand would not justify withdrawal of the reference at this time. Federal courts have universally held that "a Seventh Amendment jury trial right does not mean the bankruptcy court must instantly give up jurisdiction and that the case must be transferred to the district court." *In re Healthcentral.com*, 504 F.3d 775, 787 (9th Cir. 2007) (collecting cases).[15] Maintaining the referral to the Bankruptcy Court for adjudication of all

---

[14]    From *sua sponte* review of the Adversary Proceeding's docket sheet, the Court understands that CitiMortgage filed a Notice of Appeal and Motion for Leave to Appeal in the Bankruptcy Court on December 29, 2009, seeking yet again to appeal an unfavorable interlocutory order to this District Court. This time, CitiMortgage would appeal the striking of its jury demand. That request for interlocutory appeal has not yet reached this District Court, and the undersigned therefore expresses no opinion concerning its merits. However, the Court does observe that Judge Mahoney entered a Report and Recommendation on January 6, 2010 wherein she recommended that leave to appeal not be granted on an interlocutory basis because (1) plaintiffs are seeking only damages appropriate for civil contempt or for violation of § 105 or the Bankruptcy Court's inherent powers; (2) the Bankruptcy Court can punish a party for civil contempt without impaneling a jury; and (3) the appeal is premature because most cases involving similar issues are resolved before trial, such that the jury demand issue never comes to fruition. The Court will address these issues as needed at an appropriate time. Notwithstanding the foregoing, however, the salient point for purposes of today's ruling is that CitiMortgage's jury demand has been stricken by the Bankruptcy Court, such that there is at present no active jury demand that might support the withdrawal of the reference.

[15]    *See also Murphy*, 410 B.R. at 149 (demand for jury trial "does not compel withdrawing the reference, even in a non-core proceeding, until the case is ready to proceed to

-15-

pretrial matters does not curtail any party's Seventh Amendment right, but it does "promote[] judicial economy and efficiency by making use of the bankruptcy court's unique knowledge of Title 11 and familiarity with the actions before them." *Id.* at 787-88.[16] CitiMortgage fails to address why withdrawal of the reference should be effectuated now, when any jury trial remains distant on the horizon, rather than allowing the Bankruptcy Court to retain jurisdiction and manage the Adversary Proceeding through discovery, dispositive motions, and other pretrial proceedings, until such time as that action is ready for trial. Furthermore, CitiMortgage glosses over the fact that even if certain of plaintiffs' claims are subject to a Seventh Amendment right to jury trial, plaintiffs have also brought purely equitable claims as to which the referral could and should remain in place through final disposition. For example, plaintiffs have expressly requested "[s]uch other and different civil relief pursuant to § 105 and the Court's inherent powers as may be appropriate including an order declaring Defendant's practices improper,

---

trial") (citation and internal quotation marks omitted); *In re Centrix Financial, LLC*, 2009 WL 1605826, *4 (D. Colo. June 8, 2009) ("allowing the bankruptcy court to supervise discovery, conduct pretrial conferences, and rule on pretrial motions -- including dispositive motions -- does not infringe on the right to trial by jury"); *Levine*, 400 B.R. at 207 ("The right to a jury trial does not preclude a bankruptcy court from resolving pre-trial dispositive motions."); *American Classic*, 337 B.R. at 512 ("Courts have ... recognized that it serves the interests of judicial economy and efficiency to keep an action in Bankruptcy Court for the resolution of pre-trial, managerial matters, even if the action will ultimately be transferred to a district court for trial.") (citations omitted); *In re Enron Corp.*, 317 B.R. 232, 234-35 (S.D.N.Y. 2004) ("A rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy of favoring judicial economy that underlies the statutory bankruptcy scheme.") (citation omitted); *Stein v. Miller*, 158 B.R. 876, 880 (S.D. Fla. 1993) (bankruptcy court's ruling on dispositive motions does not trammel right to a jury trial); *City Fire Equipment Co. v. Ansul Fire Protection Wormald U.S., Inc.*, 125 B.R. 645, 649 (N.D. Ala. 1989) (*en banc*) ("This court concludes that the mere filing of a jury demand does not cause the Bankruptcy Court to lose 'jurisdiction' of the action(s) or mandate that the reference be withdrawn.").

[16]    *See also City Fire*, 125 B.R. at 649 (noting that "the Bankruptcy Court is uniquely qualified and has authority, even in actions such as this in which a jury trial has been demanded, to supervise discovery and conduct pre-trial conferences and rule on motions"); *Centrix*, 2009 WL 1605826, at *4 (because bankruptcy system promotes judicial economy and efficiency by harnessing bankruptcy court's unique knowledge of Title 11 and familiarity with actions before it, "district courts would undermine the statutory scheme by immediately withdrawing the bankruptcy court reference in every case merely because there is a right to jury trial").

illegal and fraudulent." (Third Amended Complaint, at 9, 10, 11.) Such claims for equitable relief are appropriately adjudicated by the Bankruptcy Court, even if CitiMortgage is correct that plaintiffs are also bringing legal claims to which a right to jury trial attaches.[17]

**C.      *Movant's Other Cited Factors Do Not Provide Cause.***

CitiMortgage's alternative grounds for seeking withdrawal of the reference fare no better. Initially, defendant argues that the reference should be withdrawn because the Adversary Proceeding is properly classified as non-core. Whether an action is core or non-core is an appropriate factor to weigh in the context of a request to withdraw the reference. *See, e.g., Holmes*, 315 F. Supp.2d at 1381 (one pertinent factor for § 157(d) cause analysis is "whether the claim is core or non-core"). By all appearances, however, CitiMortgage's underlying premise (*i.e.*, that the Adversary Proceeding is not a core proceeding) is unfounded. After all, Judge Mahoney has previously found that this very action "is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)." (Oct. 29 Order, at 1.) And in the *Thigpen* action (which, by CitiMortgage's admission, involved identical claims to those at issue here),[18] the Bankruptcy Court found that "[t]he matter is a 'core proceeding' because whether [the defendant] abused the bankruptcy

---

[17]      As to plaintiffs' equitable claims, there is no right to jury trial. *See, e.g., Grancinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41-42, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (in analyzing whether Seventh Amendment right to jury trial attaches, courts "examine the remedy sought and determine whether it is legal or equitable in nature"); *In re Trinsic*, 2008 WL 748394, *1 (S.D. Ala. Mar. 18, 2008) (plaintiff's accounting claims that had been previously referred to bankruptcy court "are strictly equitable claims to which no right to trial by jury attaches"). The *Trinsic* decision is instructive. In *Trinsic*, Chief Judge Granade granted a motion to withdraw the reference because of a jury demand, but specifically "delay[ed] the withdrawal until the bankruptcy court certifies that the case is ready for trial." *Id.* at *2. And the *Trinsic* plaintiffs' equitable claims were specifically excluded from the withdrawal of the reference, such that the bankruptcy court retained them through final disposition. Thus, *Trinsic* supports this Court's determination that referral of any legal claims is appropriate until such time as they are ready for trial, and that referral of plaintiffs' equitable claims is appropriate until final disposition.

[18]      In its Motion to Withdraw the Reference, CitiMortgage described *Thigpen* as "an adversary proceeding concerning substantively identical allegations and causes of action," and stated that "the causes of action asserted in both cases are identical." (Doc. 4, at 5 & n.6.) Having taken that position, CitiMortgage cannot reasonably assert in the next breath that *Thigpen* is distinguishable for purposes of core or non-core status.

process is integrally involved in the bankruptcy court's authority to enforce its own orders and procedures." (Doc. 5, Exh. 1, at 6-7.) This view finds substantial acceptance in the case law. *See In re Skinner*, 917 F.2d 444, 448 (10th Cir. 1990) ("Civil contempt proceedings arising out of core matters are themselves core matters.").[19] Because the Adversary Proceeding is a civil contempt action arising from allegations of systematic abuse of the bankruptcy process in core proceedings, it would qualify as a core proceeding under *Skinner* and its progeny.

But even if CitiMortgage were correct that the Adversary Proceeding is not properly characterized as core, that factor in isolation would not prompt this Court to exercise its discretion to withdraw the reference in this case, given the presence of countervailing circumstances. *See H & W Motor*, 343 B.R. at 215 ("The mere fact a bankruptcy proceeding is not a core proceeding is not a sufficient reason to grant a motion for the withdrawal of the reference."). In particular, this action is fundamentally about whether a bankruptcy litigant engaged in chronic, repeated misconduct, and whether civil contempt sanctions should be levied against that party. Because this Adversary Proceeding is inextricably bound to the integrity of bankruptcy proceedings (in the form of alleged abuses of bankruptcy procedures and fraud perpetrated on the Bankruptcy Court over the span of numerous cases by the same serial litigant), it is the Bankruptcy Court that should decide -- at least in the first instance -- whether sanctions are appropriate, and if so what those sanctions should be, pursuant to § 105 and that

---

[19]     *See also Matter of Hipp, Inc.*, 895 F.2d 1503, 1517 (5th Cir. 1990) (collecting cases reasoning that "civil contempt is itself core because it is inseparable from the obviously core proceedings that the civil contempt power helps to facilitate"); *In re Montano*, 398 B.R. 47, 55 (Bankr. D.N.M. 2008) ("contempt proceedings arising out a core matter (such as discharge) are themselves core matters"); *In re Reath*, 2006 WL 3524458, *6 n.7 (Bankr. D.N.J. Dec. 6, 2006) ("Civil contempt proceedings arising out of core matters are themselves core proceedings."); *In re Desilets*, 268 B.R. 516, 517 (Bankr. W.D. Mich. 2001) ("This contested matter relating to possible civil contempt is a core proceeding because it pertains to the administration of a bankruptcy estate."); *Matter of Ngan Gung Restaurant, Inc.*, 195 B.R. 593, 597 n.3 (S.D.N.Y. 1996) ("Contempt proceedings dealing with or arising during core proceedings are also core proceedings."); *In re Norris*, 192 B.R. 863, 871 (Bankr. W.D. La. 1995) ("[s]ince contempt proceedings arising out of core proceedings are themselves core matters, a bankruptcy court may adjudicate them pursuant to § 105(a)"); *In re Andrus*, 184 B.R. 311, 312 (Bankr. N.D. Ill. 1995) ("United States Bankruptcy Judges have authority as well as core jurisdiction under the Bankruptcy Code and the United States Constitution to enter orders of civil contempt.").

court's inherent powers. Simply put, the Bankruptcy Court's interest in policing attorney /
litigant misconduct before it and meting out any civil sanctions that may be appropriate is both
undeniable and compelling. The Bankruptcy Court should be permitted to perform those
functions without preemptive interference or meddling by the District Court, absent weighty
countervailing considerations not found here. The mere classification of those proceedings as
non-core would not be sufficient, in the view of this Court, to justify the discretionary snatching
of this matter out of the purview of the Bankruptcy Court.

CitiMortgage's remaining contentions are equally unavailing, and need not long detain
this Court. Defendant suggests that withdrawal of the reference is appropriate because
CitiMortgage has the right to appeal whatever Judge Mahoney does, such that "it would be more
efficient for the District Court to handle this action from the early stages." (Doc. 4, at 12.) If
accepted, this kind of reductionist reasoning would result in the reference <u>always</u> being
withdrawn from the Bankruptcy Court in the name of efficiency because of the omnipresent
possibility of appeal. Courts have given short shrift to this line of argument.[20] This is
particularly true where, as here, the Bankruptcy Court has expertise and experience in handling
these kinds of actions, has been directly involved in the underlying cases on which the Adversary
Proceeding is based, and has indicated that "[m]ost of the cases the [Bankruptcy] Court has
handled that are similar to this case have been resolved before trial." (Report and
Recommendation dated January 6, 2010, at 3.) So not only does the Bankruptcy Court have a
fundamental and direct interest in handling this proceeding centered on allegations of fraud and

---

[20]    *See, e.g., H & W Motor*, 343 B.R. at 215 ("a party's mere threat to file objections
to any future report and recommendation issued by the bankruptcy judge in a non-core
proceeding is not 'cause' for withdrawal of the reference under Section 157(d)"); *In re
Commercial Financial Services, Inc.*, 239 B.R. 586, 597 (Bankr. N.D. Okla. 1999) ("Following
Brady's argument to its logical conclusion, all matters heard by this Court should be withdrawn
by the District Court, because there is *always* the possibility that this Court may err and a party
may appeal."); *In re Westmoreland Coal Co.*, 221 B.R. 512, 515 (D. Colo. 1998) ("[t]aken to its
logical conclusion, the Trustees' argument is that parties to bankruptcy proceedings should be
entitled to circumvent the bankruptcy court and proceed directly to appeal where they anticipate
an unfavorable result from the bankruptcy court," an untenable position); *In re Ames Dept.
Stores, Inc.*, 190 B.R. 157, 163 (S.D.N.Y. 1995) (rejecting argument that right to appeal
bankruptcy court's decision rendered bankruptcy proceedings superfluous, because "that line of
reasoning would prevent any non-core matter from ever being referred to the bankruptcy court").

misconduct in other bankruptcy proceedings, but it also has the necessary expertise to do so, has knowledge of the underlying proceedings that form the basis of plaintiffs' claims, and has found that typically these cases are resolved short of trial, presumably obviating the need for duplication of effort on appeal. Withdrawal of the reference would not be appropriate under these circumstances. *See generally Apponline.Com., Inc.*, 303 B.R. 723, 728 (E.D.N.Y. 2004) (declining to withdraw reference where adversary proceeding was in preliminary stage, matter may be revolved by dispositive motions, bankruptcy court had presided over similar adversary proceedings, and bankruptcy court had complete understanding of background of underlying bankruptcy).[21]

Accordingly, the Court exercises its discretion under § 157(d) to deny CitiMortgage's request for withdrawal of the reference.

**IV.    Conclusion.**

For all of the foregoing reasons, it is hereby **ordered** as follows:

1.    Defendant/appellant CitiMortgage, Inc.'s Motion for Leave to Appeal (doc. 1) is **denied**.

2.    Defendant/appellant CitiMortgage, Inc.'s Motion to Withdraw the Reference (doc. 4) is **denied**.

3.    This action will be held open until further notice in anticipation of the imminent receipt of CitiMortgage's second motion for leave to appeal (relating to the striking of its jury demand), which was filed in the Bankruptcy Court on December 29, 2009.

---

[21]    Lastly, CitiMortgage urges the Court to withdraw the reference because its right to interlocutory appeal from the Bankruptcy Court's class certification decision (which has not yet been made) will otherwise be compromised. At this juncture, however, it is entirely speculative whether any party will want (or have viable grounds) to appeal any class certification decision that might be made in the future. Moreover, the Rule 23(f) interlocutory appeal right is not absolute, but is merely discretionary, so there are no guarantees of immediate appeal even under that framework. And CitiMortgage fails to identify a single authority where the reference has been withdrawn in anticipation of a potentially unfavorable class certification ruling as to which a party might someday wish to attempt an interlocutory appeal. Such a slender reed cannot sustain CitiMortgage's Motion.

DONE and ORDERED this 18th day of January, 2010.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE