IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

IN RE:

CATHERINE PHILON TATE,
    Debtor.
_____

| | |
|---|---|
| CATHERINE PHILON TATE, *et al.*, | ) |
|     Plaintiffs/Appellees, | ) |
| | ) |
| v. | )   MISC. ACTION 09-0039-WS-M |
| | ) |
| CITIMORTGAGE, INC., | ) |
|     Defendant/Appellant. | ) |

**ORDER**

This miscellaneous action comes before the Court once again, this time on defendant/appellant CitiMortgage, Inc.'s second Motion for Leave to Appeal (doc. 11). The Motion has been briefed and is now ripe for disposition.

**I.   Procedural History.**

Defendant's Motion was filed in connection with an adversary proceeding pending in the U.S. Bankruptcy Court for the Southern District of Alabama and styled *Catherine Philon Tate, et al. v. CitiMortgage, Inc.*, Adversary No. 09-01059-MAM (the "Adversary Proceeding"). The crux of the Adversary Proceeding is plaintiffs' allegation that CitiMortgage systematically filed fraudulent and improper affidavits in underlying bankruptcy cases involving plaintiffs and others similarly situated to them.

    *A.   Claims Joined in the Adversary Proceeding.*

In their Third Amended Class Action Complaint in the Adversary Proceeding, plaintiffs/appellees Catherine Philon Tate, John Wayne Adams and Sherry Marie Adams allege that each of them had previously brought Chapter 7 or Chapter 13 proceedings in Bankruptcy Court, and that CitiMortgage, "with the active participation and consent of one or more of its attorneys, filed an improper and fraudulent affidavit in support of a motion for relief from stay"

in each of those underlying actions. (Third Complaint, ¶¶ 12, 14, 17.)[1] The fraudulent affidavits are alleged to have been filed by CitiMortgage in September 2002, October 2003, and April 2005. According to the Third Amended Complaint, these improper filings were symptomatic of a "common and widespread practice" implemented by CitiMortgage in numerous bankruptcy proceedings, wherein it submitted "affidavits, declarations and certifications [that] were improper and fraudulent in that the signature pages were executed and/or notarized separate and apart from one or more other pages of, and/or one or more exhibits to, and/or some other part of, these affidavits, declarations and certifications." (*Id.*, ¶ 20.)[2]

On the strength of these factual allegations, plaintiffs bring causes of action, individually and on behalf of others similarly situated, for abuse of the bankruptcy process and fraud on the Bankruptcy Court.[3] In each of their claims, plaintiffs "invoke the Court's inherent powers and the Court's powers under § 105 of the Bankruptcy Code." (*Id.*, ¶¶ 31, 34, 38.)[4] Moreover, the

---

[1] Although it has not been filed in this District Court, the Third Amended Class Action Complaint is found at document 21 on the docket sheet of the Adversary Proceeding, and was filed in that action on September 15, 2009.

[2] Plaintiffs provide specifics to flesh out these amorphous allegations. For instance, plaintiffs contend that CitiMortgage filed an affidavit in plaintiff Tate's Chapter 7 case that was purportedly signed and notarized on November 19, 2002, but that verified a payment history exhibit dated two days later. (*Id.*, ¶ 10.) Similarly, plaintiffs allege that CitiMortgage filed an affidavit in plaintiff Sherry Adams' Chapter 13 case that was purportedly signed by an employee named Ann Marie Baker, but that repeatedly identified the affiant on the first page as a non-signatory named Leah Moser. (*Id.*, ¶ 18.) The inference is that both affidavits are fraudulent, the former because it referenced an exhibit that did not exist at the time of execution, and the latter because the affiant could not have reviewed page 1 of her affidavit (which was in the name of someone else) before signing it.

[3] Although there are only three named plaintiffs, the Adversary Proceeding is postured as a putative class action, purporting to include all individuals who have filed in the Southern District of Alabama a Chapter 13 or Chapter 7 bankruptcy case in which CitiMortgage filed an improper or fraudulent affidavit, declaration or certification in support of a motion for relief from stay or the like. (*Id.*, ¶¶ 22-28.)

[4] The law is clear that "[f]ederal courts, including bankruptcy courts, possess inherent authority to impose sanctions against attorneys and their clients. ... Federal statute 11 U.S.C. § 105(a) also gives the court authority to '*sua sponte*, tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to

*ad damnum* clause for each of plaintiffs' claims is crafted in identical terms to delimit the types of relief sought. In particular, those clauses provide that plaintiffs

> "seek ***all civil relief damages available to them and the class pursuant to § 105 and the Court's inherent powers***, including disgorgement and refund or credit of any fees or charges posted to their accounts and/or collected from them in connection with any motions ... where improper and/or fraudulent affidavits, declarations, or certifications were filed in support of said motions, plus interest; ***sanctions and punitive damages, if punitive damages are available in a civil § 105 context, as determined by the court***; attorneys fees and costs in amounts to be determined ...; and any other civil relief damages that the court deems appropriate."

(*Id.* at 8-11 (emphasis added).) Plaintiffs also seek "an order declaring Defendant's practices improper, illegal and fraudulent." (*Id.*) To allay any misunderstanding as to the relief sought, the final page of the Third Amended Complaint states as follows: "NO CRIMINAL SANCTIONS, NO CRIMINAL PENALTIES, NOR ANY OTHER CRIMINAL RELIEF IS SOUGHT BY THE PLAINTIFFS OR THE CLASS IN THIS COMPLAINT." (*Id.* at 12.)

### B.     The Challenged Bankruptcy Court Ruling.

On November 16, 2009, CitiMortgage filed a Demand for Jury Trial in the Adversary Proceeding, invoking its right to a jury trial on all claims, pursuant to Rule 9015, Fed.R.Bankr.P., and Rule 38, Fed.R.Civ.P. (Doc. 4, Exh. 1.) In that filing, CitiMortgage specified that it did not consent to jury trial before a bankruptcy judge, notwithstanding the mechanism under 28 U.S.C. § 157(e) authorizing bankruptcy judges to conduct jury trials with the parties' consent if specially designated to do so. On that basis, the jury demand stated that "CitiMortgage demands a jury trial of this matter to be conducted by a U.S. District Judge in the

---

prevent an abuse of process.' 11 U.S.C. § 105(a) (2005)." *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1263 (11th Cir. 2009). With respect to § 105, a bankruptcy court "may impose sanctions if a party violates a court order or rule." *Id.* at 1273. As for inherent powers, "[t]o impose sanctions under the court's inherent power, the court must find bad faith." *Id.*; *see also In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) ("The inherent power to sanction is both broader and narrower than" Rule 11 and Bankruptcy Rule 9011 because while "each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses") (citation omitted). The powers conferred upon a bankruptcy judge pursuant to § 105 are distinct from her inherent powers. *See In re Hardy*, 97 F.3d 1384, 1389 (11th Cir. 1996) ("Section 105 creates a statutory contempt power, distinct from the court's inherent contempt powers in bankruptcy proceedings ....").

Southern District of Alabama." (*Id.* at 2.)

Plaintiffs then moved for the Bankruptcy Court to strike CitiMortgage's jury demand on the ground that no jury right attached to the claims joined in the Adversary Proceeding. Following briefing and oral argument, Chief Judge Mahoney granted plaintiffs' motion to strike the jury demand by written order dated December 16, 2009. (Doc. 9, at Exh. 1.) In reaching this determination, the Bankruptcy Court expressly incorporated and adopted its opinions from several previous cases, including an order entered in *Thigpen v. Matrix Financial Services Corporation*, Case No. 04-01035 (docket no. 57), on August 2, 2004.[5] Like the case at bar, *Thigpen* involved allegations that the defendant had abused the bankruptcy process by filing improper and false affidavits in support of motions for relief from stay. Like the plaintiffs here, the *Thigpen* plaintiff sought relief under § 105, including compensatory and punitive damages, if available under that provision.[6] The *Thigpen* ruling, in a nutshell, was that the plaintiff's limitation of the relief sought to civil remedies available under § 105 negated any constitutional right to a jury trial.[7]

---

[5] In announcing her decision at the close of oral argument, the Bankruptcy Judge explained, "I'm going to stand on what I said in *Thigpen*." (Doc. 11, at 108.) A copy of the *Thigpen* order (which is unpublished) may be found in the District Court file in this action at pages 32 through 40 of document 11.

[6] Whatever merit it ultimately has (and the Court need not and will not resolve that issue in the context of defendant's request for interlocutory appeal on the jury demand issue), the viewpoint that § 105 may authorize imposition of punitive damages is not wholly bereft of authoritative support. For example, the Eleventh Circuit has observed in *dicta* that, by its terms, § 105 "encompasses all forms of orders including those that award monetary relief" and that "the plain meaning of § 105 encompasses any type of order, whether injunctive, compensative or punitive, as long as it is necessary or appropriate to carry out the provisions of the Bankruptcy Code." *Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1554 (11th Cir. 1996) (internal quotation marks omitted).

[7] *Thigpen* elaborated on this conclusion as follows:

"If the debtor is limiting herself to relief under § 105 for abuse of process and improper notarization of affidavits ..., the debtor is seeking relief that is a public right and such relief was not available in 18th century England. Section 105 and the U.S. bankruptcy system did not exist in 18th century England. The right is a public one, rather than private, because it involves not only the parties, but the integrity of the judicial process and is a matter concerning the administration of

In addition to following *Thigpen*, Chief Judge Mahoney later explained her reasoning for striking CitiMortgage's jury demand by noting that plaintiffs in this Adversary Proceeding have requested "only damages appropriate for civil contempt or for violation of section 105 or the Court's inherent powers. The Court ... will hold the Plaintiffs to their assertion that they are not seeking punitive damages or any damages outside those contexts. ... Any court can punish parties who are in contempt of that court without impaneling a jury." (Report and Recommendation dated January 6, 2010, filed as doc. 50 in Adversary Proceeding.)

There has been no final disposition of the Adversary Proceeding; to the contrary, that matter remains active and pending in Bankruptcy Court, and has not progressed beyond the discovery stage at this time. No trial date has apparently been set. Nonetheless, CitiMortgage now wishes to pursue an interlocutory appeal of the Bankruptcy Court's decision to strike its jury demand.[8] As grounds for this request, CitiMortgage reasons that "where, as here, a plaintiff claims 'punitive damages,' a defendant is entitled to a jury trial pursuant to the Seventh Amendment of the United States Constitution. Every count of Plaintiffs' Complaint seeks punitive damages, which is critical because the right to a trial by jury is based on the claims asserted and the remedies sought." (Doc. 11, at 2-3.) CitiMortgage also contends that its request for interlocutory appeal is bolstered by the fact that the Bankruptcy Court did "not in any way limit Plaintiffs' ability to seek or be awarded punitive damages." (*Id.* at 2.)

---

the bankruptcy estate.
"No jury trial right for contempt or sanctions exists according to case law either. ... The debtor ... chooses to limit the relief pursued in her complaint to those civil remedies accorded to her under § 105 of the Bankruptcy Code. Based upon this limitation of her complaint, the Court concludes that [the defendant] does not have a right to a jury trial."

(Doc. 11, at 36, 40.)

[8] It bears noting that this Motion for Leave to Appeal marks the third occasion on which CitiMortgage has petitioned this Court for relief concerning the still-active and ongoing Adversary Proceeding in Bankruptcy Court. Previously, CitiMortgage sought leave to pursue an interlocutory appeal of Chief Judge Mahoney's denial of its motion to dismiss, and also requested withdrawal of the reference to the Bankruptcy Court because it had demanded a jury trial. Both requests were denied by Order (doc. 10) entered on January 19, 2010.

## II. CitiMortgage's Request for Interlocutory Appeal.

### A. *Governing Legal Standard.*

Federal district courts have jurisdiction to hear appeals "**with leave of court**, from interlocutory orders and decrees [] of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a) (emphasis added). The statute vests district courts with discretion in determining whether or not to allow an appeal from an interlocutory order entered in a pending bankruptcy proceeding.[9] In wielding this discretion, district courts typically adopt and apply the more general standards for certification of interlocutory appeals prescribed by 28 U.S.C. § 1292(b).[10] The parties are in agreement that such an approach is proper here. (Doc. 11, at 7; doc. 11-3, at 6.)

As a threshold matter, the Eleventh Circuit has characterized § 1292(b) interlocutory appeals as a "rare exception" to the premise that the great bulk of appellate review must be conducted after final judgment. *McFarlin v. Conseco Services, LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004); *see also OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1359 (11th Cir. 2008) (pointing out that "§ 1292(b) sets a high threshold for certification to prevent piecemeal appeals" and that "[m]ost interlocutory orders do not meet this test"); *United States v. One Parcel of Real Property With Bldgs., Appurtenances & Improvements*, 767 F.2d 1495, 1498 (11th Cir. 1985) (recognizing "strong presumption against interlocutory appeals"); *Camacho v.*

---

[9] *See, e.g., In re Kassover*, 343 F.3d 91, 94 (2nd Cir. 2003) ("Under Section 158(a)(3), a district court has discretionary appellate jurisdiction over an interlocutory order of a bankruptcy court."); *In re Seminole Walls & Ceilings Corp.*, 388 B.R. 386, 390 (M.D. Fla. 2008) ("The decision to grant or deny leave to appeal a bankruptcy court's interlocutory order is committed to the district court's discretion.") (citation omitted); *In re Reserve Production, Inc.*, 190 B.R. 287, 289 (E.D. Tex. 1995) ("Leave to appeal a bankruptcy court's interlocutory order lies in the discretion of the district court.").

[10] *See, e.g., Seminole*, 388 B.R. at 390-91 (district court exercising discretion under § 158(a) "will look to the standards which govern interlocutory appeals from the district court to the court of appeals pursuant to 28 U.S.C. § 1292(b)") (citation omitted); *Atlantic Textile Group, Inc. v. Neal*, 191 B.R. 652, 653 (E.D. Va. 1996) ("although section 158 provides no direct guidance concerning the grant or denial of leave to appeal interlocutory orders, many courts apply an analysis similar to that employed by the district court in certifying interlocutory review by the circuit court of appeals under 28 U.S.C. § 1292(b)"); *Reserve Production*, 190 B.R. at 290 ("lower courts routinely analogize to § 1292(b) in considering leave to appeal under § 158(a)").

*Puerto Rico Ports Authority*, 369 F.3d 570, 573 (1st Cir. 2004) ("Section 1292(b) is meant to be used sparingly, and appeals under it are, accordingly, hen's-teeth rare."). "Because permitting piecemeal appeals is bad policy, permitting liberal use of § 1292(b) interlocutory appeals is bad policy." *McFarlin*, 381 F.3d at 1259. The instant request for review of an interlocutory order under § 158(a) is cloaked with the same disfavored status that characterizes § 1292(b) motions. *See In re CIS Corp.*, 188 B.R. 873, 878 (S.D.N.Y. 1995) (interlocutory appeal under § 158(a) "is not to be granted lightly," but should be permitted "only in exceptional circumstances").

By its terms, § 1292(b) authorizes appeal of an interlocutory order only where the following criteria are satisfied: (1) "such order involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also OFS Fitel*, 549 F.3d at 1359 (litigant seeking § 1292(b) certification must satisfy all of these elements); *McFarlin*, 381 F.3d at 1256 (describing these three criteria as the "core requirement" for § 1292(b) certification). Once again, the parties agree that the § 1292(b) criteria are controlling. (Doc. 11, at 7-17; doc. 11-3, at 6-11.)

### B. *Merits of CitiMortgage's Request for Interlocutory Appeal.*

CitiMortgage's request for appeal of the Bankruptcy Court's interlocutory order striking the jury demand founders on the "material advancement" prong of the § 158(a) and § 1292(b) analysis. As mentioned *supra*, a statutory prerequisite for invoking that "rare exception" to the prohibition on interlocutory appeals is that an immediate appeal "materially advance the ultimate termination of the litigation." § 1292(b). The Eleventh Circuit has explained that this requirement means precisely what it says, to-wit: that "resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259; *see also Gipson v. Mattox*, 511 F. Supp.2d 1182, 1193 (S.D. Ala. 2007). That element simply is not present here.

By its own reckoning, the issue that CitiMortgage wishes to appeal at this time is "whether a party has a right to a jury trial when there is a punitive damages claim asserted in a § 105 context." (Doc. 13, at 2.) The Bankruptcy Court has answered this question in the negative. But CitiMortgage properly recognizes that a "corollary" to this issue is "whether punitives are recoverable *at all* in a § 105 action. ... [T]he controlling question of law squarely at issue in this

appeal prompts a corresponding legal question over which there is also a likely substantial ground for differing opinion, *i.e.* whether punitives are recoverable in a § 105 action." (Doc. 13, at 5 n.2.) As CitiMortgage concedes, the Bankruptcy Court has refrained from answering that uncertain "corollary" legal question to date. (Doc. 13, at 4 n.2.)[11]

To the extent that CitiMortgage is seeking interlocutory review of whether punitive damages are recoverable in the § 105 context, such a request is obviously premature because the Bankruptcy Court has never ruled on that issue. It goes without saying that a litigant cannot appeal on an interlocutory basis a question which has not been presented to or decided by the court below, yet CitiMortgage's briefs imply that such is its intent.[12] More importantly, depending on how it is decided, that corollary issue may obviate, in whole or in part, the ruling that CitiMortgage seeks to appeal, and may moot the entire appeal. Stated differently, CitiMortgage has represented in its briefs that it wishes to appeal from Chief Judge Mahoney's interlocutory order finding no right to a jury trial when punitive damages are sought in a § 105 context. At some point, if the adversary proceeding is not settled or dismissed on other grounds, the Bankruptcy Court will have to make the purely legal determination of whether punitive damages are available under § 105. If the Bankruptcy Court answers that legal question in the

---

[11] The Bankruptcy Court's written order striking CitiMortgage's jury demand did not mention this corollary issue at all. To be sure, the *Thigpen* decision, on which the Bankruptcy Court's ruling in this case rests, cited to Eleventh Circuit *dicta* suggesting the availability of punitive damages in the § 105 context. However, the Bankruptcy Court in *Thigpen* emphasized that it was "not deciding this issue at this juncture" and that "the court will only award punitive damages if it is firmly convinced they are available in a civil § 105 context." (Doc. 11, at 37.) And the precise inflection point between a court's authority to impose civil sanctions and the right to a jury trial in "serious cases" of punitive sanctions appears not to be well defined. *See generally United States v. City of Miami*, 195 F.3d 1292, 1298 (11th Cir. 1999) (while district courts enjoy wide discretion to fashion equitable remedies for civil contempt, "[a] punitive or criminal contempt sanction may only be fashioned after many of the due process safeguards afforded to defendants in criminal proceedings - the right to counsel, the privilege against self-incrimination the presumption of innocence, and **the right to a jury trial in serious cases** - are provided to an alleged contemnor") (emphasis added).

[12] By all appearances, CitiMortgage has never moved to dismiss plaintiffs' claims for punitive damages on the grounds that such relief is unavailable in a civil § 105 context, and has never taken any other action to bring this critical question to the fore in the Adversary Proceeding.

negative, then plaintiffs' claim for punitive damages evaporates, and it is of no consequence whether a jury trial right would have accrued had such a claim been legally cognizable. Simply put, until the Bankruptcy Court has ruled on the availability of punitive damages in a § 105 proceeding, CitiMortgage's contention that it has a constitutional right to a jury trial for that punitive damages claim is both hypothetical and premature.[13]

---

[13] This conclusion is not altered by CitiMortgage's ambiguity and inconsistency in describing the scope of the issue of which it seeks interlocutory review. For example, CitiMortgage balks that "neither the Complaint nor the Bankruptcy Court's Order in any way limits the type of punitive damages award that may be sought," such that the Bankruptcy Court "left open the possibility of a traditional punitive damages award." (Doc. 11, at 2, 10.) This argument could be construed as reframing the issue on appeal to address CitiMortgage's right to a jury trial for a traditional punitive damages claim (*i.e.*, one brought outside of § 105). But the pleadings, the representations of plaintiffs' counsel and the words of the Bankruptcy Court unequivocally negate the possibility of a traditional punitive damages claim here. After all, the Third Amended Complaint is exceedingly clear that plaintiffs seek "sanctions and punitive damages, if punitive damages are available in a civil § 105 context." Likewise, in oral argument, plaintiffs' counsel reiterated that "[w]e're only seeking punitive damages in a civil contempt context and no other. And we say that. ... [W]e're seeking only that relief which it is the court's power to award which does not invoke their right to jury trial. We've disavowed those claims." (Doc. 11, at 103, 105.) And the Bankruptcy Court's Report and Recommendation stresses that it "will hold the Plaintiffs to their assertion that they are not seeking punitive damages or any damages outside" those which may be awarded under § 105 or the court's inherent powers. (Doc. 11-2, at 2.) This is not a "traditional punitive damages" case, and CitiMortgage's repeated suggestion to the contrary is erroneous.

Additionally, the Court is aware that plaintiffs are or may be seeking an award of punitive damages under the Bankruptcy Court's inherent powers, and an award of compensatory damages under § 105 and/or inherent powers. *See generally Jove*, 92 F.3d at 1553 ("Section 105 aside, courts have inherent contempt powers in all proceedings, including bankruptcy, to achieve the orderly and expeditious disposition of cases.") (citation and internal quotation marks omitted); *Hale v. U.S. Trustee*, 509 F.3d 1139, 1148 (9th Cir. 2007) (recognizing that "bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court") (citation omitted); *In re Green*, --- B.R. ----, 2010 WL 346090, *2 (Bankr. S.D.N.Y. Feb. 2, 2010) ("Bankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper conduct.") (citations omitted). To the extent that CitiMortgage is predicating its jury demand on those aspects of the case (which is not clearly so, given its focus on punitive damages and the shifting manner in which CitiMortgage's briefs characterize the issue it seeks to appeal), the appeal is likewise premature. If the Court understands correctly, CitiMortgage's position is that the Bankruptcy Court lacks the power under both its inherent powers and § 105 to impose awards of money damages as a civil sanction. Unless and until that threshold issue is resolved, the question of whether a litigant has a jury trial right where such money damages are sought as

In sum, it would not behoove this Court, the parties, or the interests of efficient and orderly administration of justice to delay the Adversary Proceeding for an extended period of time to conduct an interlocutory appeal of an issue that may prove to be of nothing more than academic interest. This Court could review the Bankruptcy Court's conclusions concerning the lack of a jury trial right where punitive damages are sought in the § 105 context, order briefing by the parties, halt the Adversary Proceeding, and ultimately affirm or reverse those determinations, only to have that ruling go for naught if the Bankruptcy Court were later to decide that punitive damages are unavailable under § 105 as a matter of law, such that the claims on which CitiMortgage's jury demand was predicated are no longer part of the case. This risk of pointless piecemeal proliferation of litigation, culminating in wasted time and effort by the parties and the appealed-to court in adjudicating appeals for cases that have not been fully and finally decided, is precisely why the interlocutory appeal mechanism is disfavored. More specifically, the distinct possibility that resolution of the issue which CitiMortgage seeks to appeal would achieve nothing in the larger scheme of the Adversary Proceeding is enough to convince the undersigned that an immediate appeal would <u>not</u> materially advance the termination of this litigation. Therefore, appeal of the Bankruptcy Court's written order dated December 16, 2009, is inappropriate at this time under the legal standards promulgated by § 158(a) and § 1292(b).

### III.    Conclusion.

CitiMortgage may or may not have valid arguments that punitive damages (or other forms of legal relief) are unavailable as civil relief damages under 11 U.S.C. § 105 and that the Bankruptcy Court's inherent powers do not authorize the imposition of such sanctions, either. But these issues have never been squarely presented to the Bankruptcy Court for resolution in the Adversary Proceeding, and consequently have not been decided. As CitiMortgage recognizes, the aspect of the interlocutory ruling which it desires to appeal (namely, the

---

civil sanctions does not come into play. Again, if money damages are unavailable under § 105 and the inherent powers, then the jury trial issue is moot. By attempting to appeal the striking of its jury demand before obtaining a ruling on the crucial underlying question of whether claims for punitive and other money damages are legally cognizable on plaintiffs' stated theories, CitiMortgage places the cart before the horse.

Bankruptcy Court's finding that no jury trial right is afforded in a § 105 action with a punitive damages claim) is necessarily intertwined with the threshold issue of whether punitive damages are available in the § 105 context at all. Depending on the uncertain and undecided outcome of that purely legal corollary issue, CitiMortgage's stance that it would have a jury trial right if those claims were legally cognizable may become moot. After all, plaintiffs are not asking for a general award of punitive damages, but are instead seeking them only to the extent they are available in a civil § 105 context or under the inherent powers of the Bankruptcy Court. If punitive damages are not available in those contexts, then they are not part of the case, and there is no need for any court to examine whether CitiMortgage would have been entitled to a jury if punitive damages had been available in that setting. Accordingly, it would be a poor use of judicial and litigant resources to perform an interlocutory review of the striking of CitiMortgage's jury demand when there is a substantial likelihood that such interlocutory review would not materially advance the litigation.

For all of these reasons, defendant's Motion for Leave to Appeal (doc. 11) is **denied**.

DONE and ORDERED this 9th day of March, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE